IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:20-CT-3322-M

RONALD KEITH SUTHERLAND, JR.,    )
                                 )
            Plaintiff,           )
                                 )
      v.                         )                    ORDER
                                 )
JOHN SAPPER, et al.,             )
                                 )
            Defendants.          )

This matter is before the court on defendants' motions for summary judgment [D.E. 60] and to seal [D.E. 65]. Also before the court are plaintiff's motions for reconsideration [D.E. 69], for extension of time [D.E. 72], to deem response to defendant's motion for summary judgment timely [D.E. 73], and for judicial notice [D.E. 75]. For the reasons stated below, defendants' motion to seal is granted, and their motion for summary judgment is denied. Plaintiff's motions for extension of time, to deem response timely, and for judicial notice are granted. Plaintiff's motion for reconsideration is granted in part and denied in part.

PROCEDURAL HISTORY

On October 16, 2020, plaintiff commenced this action by filing a verified complaint alleging defendants violated his civil rights. [D.E. 1]. Plaintiff contends his Fifth, Eighth, and Fourteenth Amendment rights under the United States Constitution were violated when he filed multiple grievances regarding second-hand smoke from cigarettes and synthetic marijuana, but

defendants took no action to address the issue. (Compl. [D.E. 1] at 7–10; Am. Compl. [D.E. 6] at 1).[1]

After conducting its initial review, the court allowed the action to proceed on June 9, 2021. On August 11, 2021, defendants filed a notice of suggestion of death as to defendant Jason W. Cohoon ("Cohoon"). On the discovery completion date, on December 27, 2021, defendants filed a motion to dismiss, arguing plaintiff failed to state a claim and exhaust his administrative remedies. (Def. Mem. [D.E. 38] at 3–8). On September 26, 2022, the court granted defendants' motion to dismiss determining plaintiff had failed to exhaust his administrative remedies. In its order, the court concluded plaintiff failed to respond to defendants' motion to dismiss because the verified document filed January 4, 2022, was signed and stamped as legal mail prior to the filing of defendants' motion. (Sept. 26, 2022, Ord. [D.E. 44] at 1 n.1).

On October 6, 2022, plaintiff filed a notice of appeal. Plaintiff argued he had, in fact, mailed a response in opposition to defendants' motion to dismiss in January 2022. (Fourth Cir. Unpublished Op. [D.E. 52] at 2). On December 20, 2022, the United States Court of Appeals for the Fourth Circuit vacated this court's September 26, 2022, order and remanded the case for further determination of whether plaintiff "in fact mailed a response in opposition and, if so, whether dismissal of the complaint is still the appropriate disposition." (Id.).

On September 26, 2023, out of an abundance of caution, the court construed plaintiff's January 4, 2022, and January 18, 2023, filings as responses in opposition to defendants' motion to dismiss. (Sept. 26, 2023, Ord. [D.E. 59] at 3). The court granted in part and denied in part

---

[1]     Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system.

defendants' motion to dismiss. (Id. at 10). The court dismissed plaintiff's Fifth and Fourteenth Amendment due process claims and defendants Kimberly D. Grande ("Grande"), Sean Dillard ("Dillard"), and Jason W. Cohoon ("Cohoon"). (Id.). However, the court denied the motion to dismiss as to plaintiff's conditions of confinement claims against defendants John Sapper ("Sapper"), Ashley Hughes ("Hughes"), and Larry Dail ("Dail"). (Id.). The court directed defendants Sapper, Hughes, and Dail to file a summary judgment motion addressing a confidential grievance plaintiff purportedly mailed to Dail and "its relation to whether plaintiff has exhausted his administrative remedies for his conditions of confinement claims." (Id.).

On October 10, 2023, defendants filed the instant motion for summary judgment, arguing, inter alia, that plaintiff has failed to exhaust his administrative remedies. [D.E. 60] In support, defendants relied on a memorandum of law [D.E. 61], statement of material facts [D.E. 62], and appendix of exhibits [D.E. 63] thereto comprised of the following: (1) declaration of counsel; (2) plaintiff's incarceration summary; (3) subsections of the North Carolina Department of Public Safety ("NCDPS") Policy Manual; (4) plaintiff's medical records; (5) NCDPS press release regarding TextBehind mail scanner; (6) declaration of defendants Dail, Sapper, and Hughes; (7) declaration of Bruce Hodges, warden of Bertie Correctional Institution ("BCI"); (8) plaintiff's Step I and II grievances; (9) unit searched resulting in tobacco contraband dated January 1, 2019, to October 31, 2020; and (10) plaintiff's second-hand smoke grievance with Hughes' response. That same day, defendants filed a motion to seal plaintiff's medical records. [D.E. 65].

On October 16, 2023, the court granted plaintiff's motion for extension of time to respond to defendants' motion for summary judgment. [D.E. 68]. On November 3, 2023, plaintiff filed a motion for reconsideration of the court's September 26, order. [D.E. 69]. On December 4, 2023,

3

the court granted plaintiff's second motion for extension of time to respond to defendants' motion for summary judgment. [D.E. 71]. On December 19, 2023, plaintiff filed the instant third motion for extension of time [D.E. 72], and the following day filed a motion to deem his response in opposition timely [D.E. 73].

On December 27, 2023, plaintiff filed his response in opposition to defendants' motion for summary judgment. [D.E. 74]. Incorporated into his response, plaintiff relied on a memorandum of law, opposing statement of facts, statement of disputed facts, his declaration, and an appendix of exhibits to the statement of material facts comprised of the following: (1) a sick call requests dated April 13 and August 13, 2020; (2) administrative remedy grievance statements dated April 20, July 21, August 20, and September 6, 2020; (3) Step I grievance responses dated May 12, August 3, and September 21, 2020; (4) Step II grievance response dated August 7, 2020; (5) Step III grievance response dated August 17, 2020; (6) plaintiff's medical records; (7) samples of plaintiff's signature; and (8) list of number of grievances filed. That same day, plaintiff filed a motion for judicial notice. [D.E. 75].

STATEMENT OF THE FACTS

As relevant herein, the facts of this case, undisputed and viewed in the light most favorable to plaintiff, are summarized as follows. At all times relevant to this action, plaintiff was housed in BCI. (Compl. [D.E. 1] at 7).[2] Since January 2019, plaintiff has been breathing in second-hand smoke from cigarettes and synthetic marijuana. (Id.). On April 20, 2020, he filed a grievance stating:

---

[2]      Plaintiff's complaint and response documents are verified under penalty of perjury and, therefore, serve as an opposing declaration for purposes of the instant motion. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991); (DE 1 at 18).

4

> There is an abundance of smoke in the dorm that I am forced to breathe in from hand rolled cigarettes, marijuana & K2. It irritates my lungs, throat and gives a burning sensation to my nose, and my breathing becomes taxed and laborious because of it. It comes primarily from lower-red (segregation), from a cell near mine or even from cells further away.

(Pl. Ex. B [D.E. 74-6] at 2; see also Compl. [D.E. 1] at 7). Defendant Hughes, an assistant unit manager, provided a Step I response on May 12, 2020, stating, "As always, staff will attempt to remove any and all contraband at the facility which should alleviate your issues." (Pl. Ex. B2 [D.E. 74-6] at 3; Compl. [D.E. 1] at 7; Hughes Decl. [D.E. 63-12] ¶¶ 2, 5). Plaintiff indicated he agreed with the grievance response. (Pl. Ex. B2 [D.E. 74-6] at 3; Compl. [D.E. 1] at 7).

Approximately one month later, there had been no change with the conditions of second-hand smoke. (Compl. [D.E. 1] at 8). On June 15, 2020, plaintiff submitted another grievance to have the second-hand smoke addressed. (Id.). The grievance was delivered to formerly named defendant Cohoon, a unit manager, but the grievance was not processed. (Id. at 4, 8; Pl. Stmt. [D.E. 74-2] at 2).

After not receiving a response, on July 21, 2020, plaintiff wrote defendant Sapper, the Warden, a letter regarding the lack of response to the June 15 grievance and the second-hand smoke, but he never received a reply. (Compl. [D.E. 1] at 3, 8; Sapper Decl. [D.E. 63-11] ¶ 2). That same day, plaintiff filed another grievance inquiring as follows: "It has been nearly one month since I wrote a grievance and I have not yet received a reply. The grievance was written and turned in on or about 6/15/20. It spoke of current conditions and risks that needed to be addressed and centered around my well-being." (Pl. Ex. B3 [D.E. 74-6] at 4; Compl. [D.E. 1] at 8). In resolution, the grievance seeks: "A response to my initial grievance would resolve this grievance." (Pl. Ex. B3 [D.E. 74-6] at 4). On August 3, 2020, Cohoon provided a Step I response providing: "Staff

5

states all townhall meetings have been had and any changes offenders will be notified." (Pl. Ex. C [D.E. 74-6] at 5; Compl. [D.E. 1] at 8l; Pl. Mem. [D.E. 74-1] at 4). Plaintiff appealed the Step I decision that same day. (Pl. Ex. C [D.E. 74-6] at 5; Compl. [D.E. 1] at 8; Pl. Mem. [D.E. 74-1] at 4). On August 7, 2020, formerly named defendant Dillard, a member of grievance personnel, responded at Step II: "After review, staff adequately addressed your concerns in step one. No further actions needed." (Pl. Ex. C1 [D.E. 74-6] at 6; Pl. Mem. [D.E. 74-1] at 4; Compl. [D.E. 1] at 4). Plaintiff appealed that same day. (Pl. Ex. C1 [D.E. 74-6] at 6; Pl. Mem. [D.E. 74-1] at 4).

On August 17, 2020, formerly named defendant Grande, a member of the inmate grievance board, provided the following Step III response:

> This examiner has reviewed this grievance and the response given by staff in the Step 1 and/or Step 2 responses. My review of this grievance reveals no violation of applicable Prisons policy nor does it show any evidence of discrimination, retaliation, or disrespect or abuse of authority by staff regarding the processing of this offender's grievances. It appears that the last grievance which you filed was April 2020, 4880-2020-LPODD-12592. You were provided with a step 1 response and signed an acknowledgement that you agreed with the response. If you are alleging that there was another grievance, you will need to provide more information regarding the date on which it was filed and the grievance number. This grievance is considered resolved.

(Pl. Ex. C1 [D.E. 74-6] at 7; Compl. [D.E. 1] at 6, 9).

On August 2, 2020, plaintiff mailed a letter and grievance to defendant Dail, the Eastern Regional Director for the North Carolina Department of Corrections, formerly NCDPS, regarding the continued existence of second-hand smoke. (Compl. [D.E. 1] at 10; Pl. Ex. G [D.E. 1-1] at 9; Pl. Ex. M2 [D.E. 74-6] at 22; Dail Decl. [D.E. 63-7] ¶ 2). Plaintiff mailed the letter to 4260 Mail Center, Raleigh, North Carolina, 27699-4260, the address for the North Carolina Director of Prisons. (Compl. [D.E. 1] at 10; Pl. Ex. M2 [D.E. 74-6] at 22). Dail never responded and the

6

grievance was never processed. (Compl. [D.E. 1] at 10; Pl. Ex. M2 [D.E. 74-6] at 22). On August 17, 2020, plaintiff wrote Dillard about Cohoon's failure to address plaintiff's second grievance, but Dillard did not respond. (Compl. [D.E. 1] at 9; Pl. Ex. F2 [D.E. 1-1] at 8).

On September 6, 2020, plaintiff again filed a grievance addressing second-hand smoke as follows:

> Cigarette, K-2 and marijuana smoke permeates the air I breath. It's in the 'Day-Room' and certainly in the cell I'm assigned. The smoke irritates my eyes, nose and causes my lungs to work laboriously – while also quickening my heart rate. It comes [through] the vents (from segregation, downstairs), it comes from my neighbors above, across and beside me.

(Pl. Ex. I2 [D.E. 74-6] at 14; see also Pl. Mem. [D.E. 74-8] at 8). On September 21, 2020, Cohoon wrote the following Step I response:

> Staff states the use of tobacco products or any controlled substance in prohibited here at BCI. I make rounds everyday and I don't smell smoke in the dayroom, nor has anyone brought it to my attention that they smell it. [O]fficers are making rounds throughout the day and nobody has reported anything. If offenders are in possession of any tobacco products or any controlled substances[,] disciplinary action is taken.

(Pl. Ex. J [D.E. 74-6] at 15). Plaintiff's signature appears on the response and indicates he agrees with the grievance response.[3] (Id.).

During the relevant time period, from January 1, 2019, to October 31, 2020, plaintiff submitted two grievances that were exhausted through Step III. (Def. Stmt. [D.E. 62] ¶ 17; Grande Decl. [D.E. 83-1] ¶ 10). On December 4, 2019, plaintiff exhausted a grievance regarding issues with the return receipt on some mail. (Def. Stmt. [D.E. 62] ¶ 18; Grande Decl. [D.E. 83-1] ¶ 10).

---

[3]    Plaintiff disputes that this is his signature and maintains it was forged. (Pl. Mem. [D.E. 74-8] at 8).

7

The second exhausted grievance is that addressed above exhausted on August 17, 2020. (Pl. Ex. C1 [D.E. 74-6] at 7; Grande Decl. [D.E. 83-1] ¶ 10).

Records from Bertie CI indicate plaintiff's Step I and Step II grievances from between January 1, 2019, and October 31, 2020, are as follows:

| **Step** | **Response Date** | **Issue** |
|---|---|---|
| Step I | 4/2/2019 | Refund from Islamic bookstore |
| Step I | 8/22/2019 | Plaintiff needs trust statement to prove indigency for pro se divorce |
| Step I | 10/21/2019 | Issues with certified mail/return receipt |
| Step I | 11/4/2019 | Issues with outgoing mail |
| Step I | 5/12/2020 | Second-hand smoke |
| Step I | 8/3/2020 | Issues with previous grievance |
| Step II | 8/7/2020 | Issues with previous grievance |
| Step I | 9/21/2020 | Second-hand smoke |

(Hodges Decl. [D.E. 63-8] ¶ 3; Hodges Decl., Ex. A [D.E. 63-9]; Def. Stmt. [D.E. 62] ¶ 22).

## COURT'S DISCUSSION

A.    Motion to Seal [D.E. 65]

Defendants move to seal exhibits in support of their motion for summary judgment that contain plaintiff's personal medical information. [D.E. 65]. Plaintiff does not object to sealing these records. The public has received adequate notice of the motion to seal. No less drastic alternative to sealing these documents is available because private information appears throughout the filing. Plaintiff's interest in preserving the confidentiality of his private health conditions outweighs any public interest in disclosure. Thus, the court grants the motion to seal.

8

B.    Motions for Extension of Time and to Deem Timely [D.E. 72, 73]

Defendants do not oppose plaintiff's motions.  For good cause shown, plaintiff's motions are granted, and his response to defendants' motion for summary judgment is deemed timely filed.

Plaintiff also requests copies of his motion for reconsideration and the docket.  As a one-time courtesy, the court will provide free copies of the motion at docket entry 69 and the docket.  The court will not provide additional free copies of filings in this matter.  Plaintiff must pay copying costs for additional requests, and he may contact the clerk's office directly to obtain the required fees.

C.    Motion for Reconsideration [D.E. 69]

Plaintiff seeks reconsideration of the court's September 26, 2023, order.  Specifically, plaintiff seeks reconsideration of the dismissal of his Fifth and Fourteenth Amendment claims and of formerly named defendants Grande and Dillard.  (Mot. Recons. [D.E. 69] at 3–7).  Plaintiff also seeks further discovery and argues the September 26 order does not align with the Fourth Circuit's remand instructions in that court's December 20, 2022, order.  (Id. at 8–9, 10–13).

Federal Rule of Civil Procedure 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).  Compared to Rule 59(e) motions to alter or amend a judgment, Rule 54(b) gives district courts "broader flexibility to revise interlocutory orders before final judgment as the litigation develops and new facts or arguments come to light." Carlson v. Boston Scientific Corp., 856 F.3d 320, 325 (4th Cir. 2017).

9

The discretion provided by Rule 54(b), however, "is not limitless." Id. The court may revise an interlocutory order only in the following circumstances: (1) a subsequent trial produces substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice. Id.; see also Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 515 (4th Cir. 2003).

Here, plaintiff argues the court committed a clear error of law. Having reviewed and fully considered plaintiff's arguments, the court discerns no clear error in the September 26 order. Plaintiff argues the due process claims should not have been dismissed because prisoners retain their First Amendment rights during the grievance process. (Mot. Recons. [D.E. 69] at 5–7). However, as stated in the September 26 order, prisoners do not have a constitutional right or due process interest in the grievance procedure itself. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017) ("Adams establishes a clear rule: inmates have no constitutional entitlement or due process interest in access to a grievance procedure. An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process, for example.").

Regarding formerly named defendants Grande and Dillard, plaintiff asserts the court erred where he alleged, they not only violated his due process rights, but were also deliberately indifferent to plaintiff's conditions of confinement. (Mot. Recons. [D.E. 69] at 2–5). Grande and Dillard's only role in the instant action were their responses to plaintiff's grievances. Thus, plaintiff's claims arise out of Grande and Dillard's participation in the grievance process, not the alleged unconstitutional conditions of confinement. See Adams, 40 F.3d at 75; Booker, 855 F.3d at 541. And the court did not err in its dismissal.

10

Plaintiff further contends this court lacks the authority to dismiss claims and defendants in this matter under the Fourth Circuit's December 20, 2022, order. (Id. at 10–13). As stated above, the Fourth Circuit remanded the action for further determination of whether plaintiff "in fact mailed a response in opposition and, if so, whether dismissal of the complaint is still the appropriate disposition." (Fourth Cir. Unpublished Op. [D.E. 52] at 2). Such an instruction does not limit this court's ability to dismiss claims and defendants.

Lastly, plaintiff seeks further discovery in this matter specifically regarding defendants alleged deliberate indifference to unconstitutional conditions of confinement. (Mot. Recons. [D.E. 69] at 8–9). Where the court denies the motion for summary judgment below, the court will order limited discovery. Plaintiff served his second set of discovery without enough time for defendants to respond prior to the discovery completion deadline. [D.E. 39]. Discovery was stayed to the extent defendants were not required to respond. [D.E. 41]. Pursuant to the procedural posture of this case and judicial efficiency, the court lifts the stay and directs defendants to respond to plaintiff's second set of discovery requests within 30 days of entry of this order.

D.     Motion for Judicial Notice [D.E. 75]

Plaintiff seeks to have the court take judicial notice of sections of the NCDPS Policy Manual and state statutes. The NCDPS Policy Manual and state statutes are publicly available government record, the authentication of which are not questioned by the parties. See Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009); see also Fauconier v. Clarke, 652 F. App'x 217, 220 n.4 (4th Cir. 2016). Accordingly, the motion is granted.

11

E.    Motion for Summary Judgment [D.E. 60]

1.    Legal Standard

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247– 48 (1986).  The moving party initially must demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party' s case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted).  A court reviewing a motion for summary judgment should determine if a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249.  In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

2.    Analysis

Defendants assert that plaintiff failed to exhaust administrative remedies before filing this action.  The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is mandatory, and the court therefore may not excuse failure to exhaust, even to take special circumstances into account.  Ross v. Blake, 578 U.S. 632, 639 (2016);

12

Woodford v. Ngo, 548 U.S. 81, 83–85 (2006). A prisoner must exhaust his administrative remedies even if the relief requested is not available under the administrative process. Booth v. Churner, 532 U.S. 731, 741 (2001). Administrative grievances must contain sufficient detail to "alert[] the prison to the nature of the wrong for which redress is sought" and "give prison officials a fair opportunity to address the alleged [mistreatment]." Wilcox v. Brown, 877 F.3d 161, 167 n.4 (4th Cir. 2017); Moore v. Bennette, 517 F.3d 717, 729 (4th Cir. 2008).

The North Carolina Department of Adult Correction ("DAC") has a three-step administrative remedy procedure ("ARP"), which inmates must complete to exhaust administrative remedies. See DAC, Policy & Procedure Manual, Subchapter G, § 0300 et seq., available at https://public.powerdms.com/NCDAC/tree/documents/2145373; see also Moore, 517 F.3d at 721 (describing policy).[4] Pursuant to the ARP, the DAC first encourages inmates to attempt informal communication with responsible authorities at the facility in which the problem arose. ARP § .0301(a). If informal resolution is unsuccessful, the ARP provides that any inmate in DPS custody may submit a written grievance on Form DC-410. Id. § .0310(a). If the inmate is not satisfied with the decision reached at the step-one level of the grievance process, he may request relief from the facility head. Id. § .0310(b)(1). If the inmate is not satisfied with the decision reached by the facility head, he may appeal his grievance to the Secretary of Public Safety through the inmate grievance examiner. Id. § .0310(c)(1). The decision by the inmate grievance examiner or a modification by the Secretary of Public Safety shall constitute the final step of the ARP. Id. § .0310(c)(6).

---

[4] The ARP is a publicly available governmental record, the authentication of which is not questioned by the parties. Accordingly, the court may take judicial notice of the policy when resolving the instant motion. See Philips, 572 F.3d at 180; Fauconier, 652 F. App'x at 220 n.4.

13

The ARP further provides as follows: "If an inmate believes that a grievance is confidential in nature, his grievance may be submitted directly with the Director of Prisons and mailed as legal mail. The inmate must clearly explain the nature of the complaint and the reasons for not following the regular grievance procedure." Id. § .0309. Additionally, "[i]f at any level of the [ARP], including the final level, the inmate does not receive a response within the time provided for reply, including any properly noticed extension, the absence of a response shall be a denial at that level which the inmate may appeal." Id. § .0307(f)(5). An appeal process after filing a confidential grievance with the Director of Prisons is not addressed in the ARP.

Here, plaintiff's underlying claims allege defendants were deliberately indifferent to plaintiff's unconstitutional conditions of confinement where plaintiff was continuously exposed to second-hand smoke. (Compl. [D.E. 1] at 7). Plaintiff, however, did not exhaust administrative remedies for this claim where he did not file a grievance addressing second-hand smoke and then proceed through all steps of the ARP. (See (Pl. Ex. B [D.E. 74-6] at 2; Pl. Ex. B2 [D.E. 74-6] at 3; Pl. Ex. B3 [D.E. 74-6] at 4; Pl. Ex. C1 [D.E. 74-6] at 7; Pl. Ex. M2 [D.E. 74-6] at 22; Pl. Ex. I2 [D.E. 74-6] at 14; Hodges Decl. [D.E. 63-8] ¶ 3; Hodges Decl., Ex. A [D.E. 63-9]; Def. Stmt. [D.E. 62] ¶ 22). Plaintiff argues that his July 21, 2020, grievance addressed the second-hand smoke, and thus, the August 17, 2020, Step III response by Grande constitutes exhaustion. (Pl. Mem. [D.E. 74-8] at 6). The July 21, 2020, grievance stated, "It has been nearly one month since I wrote a grievance and I have not yet received a reply. The grievance was written and turned in on or about 6/15/20. It spoke of current conditions and risks that needed to be addressed and centered around my well-being." (Pl. Ex. B3 [D.E. 74-6] at 4). There is no mention of second-hand smoke or specific conditions risking plaintiff's wellbeing. Thus, the grievance does not contain sufficient

14

detail to exhaust plaintiff's claims for second-hand smoke. See Wilcox, 877 F.3d at 167 (requiring that administrative grievances contain sufficient detail to "alert[] the prison to the nature of the wrong for which redress is sought" and "give prison officials a fair opportunity to address the alleged [mistreatment]"). Further, plaintiff has not exhausted administrative remedies by mailing a confidential grievance to defendant Dail, where Dail is not the Director of Prisons. See DAC, Policy & Procedure Manual, Subchapter G, § .0309.

Plaintiff argues that he is not required to exhaust administrative remedies where the correctional institution's procedure is "unavailable." See Ross, 578 U.S. at 642–44. An administrative remedy procedure is unavailable if the "procedure's provided avenues for recourse are not meaningfully 'capable of use to obtain some relief for the actions complained of.'" Griffin v. Bryant, 56 F.4th 328, 335 (4th Cir. 2022) (quoting Ross, 578 U.S. at 642–43). The Supreme Court has identified three non-exclusive circumstances where an administrative remedy procedure is unavailable: 1) where the procedure "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; 2) when it is "so opaque that it becomes, practically speaking, incapable of use"; and 3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, 578 U.S. at 642–44; Griffin, 56 F.4th at 335.

Here, plaintiff argues the process was not available to him where his June 15, August 2, and September 6, 2020, grievances were not processed, and his signature was forged on the September 21, 2020, Step I response to his September 6, 2020, grievance. (Pl. Mem. [D.E. 74-8] at 7–8). Regarding the unprocessed August 2 grievance, the record of evidence demonstrates this grievance was the "confidential grievance" mailed to defendant Dail. (See Compl. [D.E. 1] at 10;

Pl. Ex. G [D.E. 1-1] at 9; Pl. Ex. M2 [D.E. 74-6] at 22; Dail Decl. [D.E. 63-7] ¶ 2). Where plaintiff did not properly submit such a grievance, the failure to process the grievance does not show the grievance procedure was unavailable.

However, the court finds the grievance procedures were unavailable to plaintiff for the unprocessed complaints regarding second-hand smoke. The undisputed evidence shows Cohoon was responsible for responding to both the June 15 and September 6 grievances. (Compl. [D.E. 1] at 8; Pl. Stmt. [D.E. 74-2] at 2; Pl. Ex. J [D.E. 74-6] at 15; Def. Stmt. [D.E. 62] ¶ 4). Significantly, there is no evidence of record disputing plaintiff's signature was forged on Cohoon's September 21, 2020, Step I response. Accordingly, there is a genuine issue of material fact as to whether the grievance process was available to plaintiff for his claims regarding second-hand smoke. Ross, 578 U.S. at 642–44 (providing grievance process is unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation"); Griffin, 56 F.4th at 335.

CONCLUSION

For the reasons discussed above, defendants' motion to seal [D.E. 65] is GRANTED, and their motion for summary judgment is DENIED WITHOUT PREJUDICE for refiling. Plaintiff's motions for extension of time [D.E. 72], to deem response to defendant's motion for summary judgment timely [D.E. 73], and for judicial notice [D.E. 75] are GRANTED. Plaintiff's motion for reconsideration [D.E. 69] is GRANTED IN PART AND DENIED IN PART. The motion is granted to the extent the court lifts the discovery stay. The remainder of the motion is denied. The

16

clerk is DIRECTED to send plaintiff copies of the motion for reconsideration at docket entry 69 and of the docket.

The discovery stay in this matter is LIFTED. Defendants are DIRECTED to respond to plaintiff's second set of discovery requests within **30 days** of entry of this order. Any renewed motions for summary judgment are due no later than **May 26, 2025**.

SO ORDERED, this the 31⁵ᵗ day of _____ March _____, 2025.

_____
RICHARD E. MYERS, II
Chief United States District Judge